UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT K. MARSHALL<br>*Plaintiff*<br><br>v.<br><br>UHS of HARTGROVE, INC.,<br>d/b/a HARTGROVE HOSPITAL<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **FILED: JULY 3, 2008**<br>**08CV3824**<br>**JUDGE LEFKOW**<br>**MAGISTRATE JUDGE COX**<br>**AEE**<br><u>Jury Trial Demanded</u> |

## COMPLAINT

Plaintiff, ROBERT K. MARSHALL, by and through his attorneys, complains of UHS of HARTGROVE, INC., d/b/a HARTGROVE HOSPITAL as follows:

## JURISDICTION

1. Jurisdiction is based upon 28 U.S.C. § 1331, 28 U.S.C. § 1343, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.

2. Plaintiff has complied with all administrative prerequisites by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached hereto as Exhibit A. The EEOC has issued to Plaintiff a Notice of Right to Sue, attached hereto as Exhibit B.

## VENUE

3. This action properly lies in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to this claim occurred in this judicial district.

## PARTIES

4. Plaintiff, DR. ROBERT K. MARSHALL ("Plaintiff" or "Dr. Marshall") is a

sixty-year old male resident of the State of Illinois who was formerly employed by Defendant, UHS of Hartgrove, Inc., d/b/a Hartgrove Hospital.

5. Defendant, UHS of HARTGROVE, INC., d/b/a HARTGROVE HOSPITAL ("Defendant" or "Hartgrove") is a corporation authorized to do business in Illinois and operates at 520 North Ridgeway Avenue in Chicago, Illinois.

6. At all times relevant hereto, Defendant employed more than twenty (20) employees and was engaged in an industry affecting commerce; Defendant is an employer under the Age Discrimination in Employment Act.

## FACTUAL ALLEGATIONS

7. Dr. Robert K. Marshall has a Ph.D in clinical and educational psychology and is a licensed Psychologist.

8. Dr. Marshall began working for Defendant in 1980 as the Director of Psychology, and by 2006 was one of the oldest, most distinguished and respected employees at Hartgrove.

9. Dr. Marshall is the only person to have served two separate terms as President of the Chicago Area Directors of Training in Clinical Psychology.

10. Hartgrove maintains a clinical training program for psychology students from several local educational institutions.

11. Under Dr. Marshall's leadership, Hartgrove's clinical psychology training program developed into, and enjoyed a reputation as, one of the premier training programs in the Chicago area.

12. During the course of his employment with Defendant, Dr. Marshall consistently received excellent annual performance reviews from five different hospital administrators.

2

13. In the year leading up to Dr. Marshall's discharge, the Defendant's new CEO, Mr. Steven Airhart, made repeated derogatory comments to the Plaintiff referencing his long tenure and depreciating the value of his services.

14. Mr. Airhart's comments included devaluing Dr. Marshall's longevity and calling attention, in a threatening manner, to Dr. Marshall's salary as being "out of the norm," as a proxy for age.

15. Mr. Airhart's treatment of Plaintiff was part of a repeated pattern of harassment, humiliation, and intimidation of long-term employees over the age of 40.

16. On January 12, 2006, Mr. Airhart falsely and without substantiation accused Plaintiff of not fulfilling the training requirements for students and breaking the training contracts Defendant had with the local educational institutions.

17. Dr. Marshall immediately refuted the improper and baseless accusation and explained the training procedures to Mr. Airhart.

18. Dr. Marshall additionally received confirmation from the directors of training at each of the respective educational institutions that Hartgrove's program was in full compliance with the training contracts and that there was no basis for Mr. Airhart's charge.

19. The directors were in fact very pleased with the training of their students and they validated the overall superior reputation of the program under Dr. Marshall.

20. Rather than one of relief and satisfaction, Mr. Airhart's response to Plaintiff's presentation of the directors' confirmations was hostile, threatening, and accusatory; he charged Plaintiff with "behaving improperly," "interfering with an investigation," and he renewed the false accusations he made against Dr. Marshall.

21. Through January and February 2006 Dr. Marshall continued to expose the baseless nature of Mr. Airhart's accusations, both verbally and in writing.

22. During this time, Mr. Airhart deliberately excluded Dr. Marshall from applying for a promotion to Director of Ambulatory Care Services, a position that had not previously existed in the organization.

23. On January 20, 2006, the new position of Director of Ambulatory Care Services was created, announced, and offered by Mr. Airhart to one of Plaintiff's former student trainees, Dr. Missy Bundy.

24. Dr. Missy Bundy is substantially younger than Dr. Marshall and was the only person interviewed for this new position.

25. The new position's job requirements as to qualifications exactly fit Dr. Marshall's credentials.

26. Dr. Marshall's credentials are far superior to Dr. Bundy's based on their approximately 23 years difference in post-licensure experience.

27. This new position was organizationally placed immediately under the CEO, Mr. Airhart, and directly above Dr. Marshall.

28. The promotion of Dr. Missy Bundy to Director of Ambulatory Care Services was a *de facto* demotion for Plaintiff because he was no longer the highest ranking psychologist in the organization and he was placed under the supervision of a less qualified, less experienced former student who had been licensed for less than 3 years compared to Plaintiff's 25 years of licensure.

29. Normally, a new position at the level of Director of Ambulatory Care Services would require deliberation and consultation by the CEO with Hartgrove's Executive Council.

30. Mr. Airhart, however, neither deliberated nor consulted with the Executive Council about the creation of the new position of Director of Ambulatory Care Services, despite attending a meeting with the Executive Council on January 19, 2006, the day before he created and placed a substantially younger person in the new position.

31. When Dr. Marshall learned of the new position, and Missy Bundy's placement in it, he complained to Mr. Airhart.

32. Mr. Airhart reacted angrily to Dr. Marshall's complaint, threatening Dr. Marshall that he should forget about the new position and instead worry about Mr. Airhart's "investigation" into his prior accusations, which Dr. Marshall and the directors had already invalidated.

33. On February 7, 2006, Defendant terminated Plaintiff's employment.

34. Because of Defendant's actions, Plaintiff has suffered irreparable damage to his career and professional reputation, public humiliation, intense emotional distress and suffering, and severe financial hardship.

## AGE DISCRIMINATION IN EMPLOYMENT ACT

35. Plaintiff re-alleges paragraphs 1 through 34 and incorporates them as if fully set forth herein.

36. The Age Discrimination in Employment Act, specifically 29, U.S.C. § 621 et seq., makes it unlawful for an employer to discriminate against an employee on the basis of an employee's age.

37. By its conduct as alleged herein, Defendant discriminated and retaliated against Plaintiff on the basis of his age.

38. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible age discrimination.

39. Plaintiff demands to exercise his right to a jury trial of this matter

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this court enter judgment in his favor and against Defendant and:

a. Declare that Defendant's conduct constitutes unlawful and/or willful discrimination in violation of the Age Discrimination in Employment Act;

b. Award Plaintiff the value of all compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c. Award Plaintiff the value of compensation and benefits he will lose in the future as a result of Defendant's unlawful conduct;

d. Award Plaintiff liquidated/punitive damages;

e. Award Plaintiff any other monetary damages to which he may be entitled;

f. Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

g. Award Plaintiff any and all other relief as the court deems just in the premises.

Respectfully submitted,

    s/ John P. Madden
Attorney for Plaintiff

John P. Madden
O'Malley & Madden, P.C.
542 So. Dearborn Street
Suite 660
Chicago, Illinois 60605
(312)-697-1382
jmadden@ompclaw.com

# CHARGE OF DISCRIMINATION

rm is affected by the Privacy Act of 1974; See Privacy Act Statement before
ting this form.

| AGEN | CHARGE NUMBER |
|---|---|
| ☐ FEPA<br>☒ EEOC | 440-2006-03500 |

Illinois Dept. Human Rights _____ and EEOC
State or local Agency, if any

(Indicate Mr., Ms., Mrs.) Dr. Robert K. Marshall

HOME TELEPHONE (Include Area Code) 708-383-0164

ET ADDRESS 521 S. Clinton   CITY, STATE AND ZIP CODE Oak Park, IL 60304

DATE OF BIRTH

ED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT
CY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

: Universal Health Services / Hartgrove Hospital

NUMBER OF EMPLOYEES, MEMBERS 20+

TELEPHONE (Include Area Code) 773-722-3113

ET ADDRESS 520 N. Ridgeway   CITY, STATE AND ZIP CODE Chicago, IL 60624   COUNTY Cook

TELEPHONE NUMBER (Include Area Code)

ET ADDRESS   CITY, STATE AND ZIP CODE   COUNTY

SE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ AGE
☐ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (AL
                       2/7/06
☐ CONTINUING ACTION

PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See Attached pages (2).

APR 13 2006

nt this charge filed with both the EEOC and the State or local Agency,
y. I will advise the agencies if I change my address or telephone
ber and I will cooperate fully with them in the processing of my
ge in accordance with their proceedures.

are under penalty of perjury that the foregoing is true and correct.

_[signature]_
Charging Party (Signature)

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true
to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

FORM 5 (Test 10/94)

08CV3824
JUDGE LEFKOW
MAGISTRATE JUDGE COX   AEE

**Charge of Discrimination**

Dr. Robert K. Marshall, *Complainant*
Universal Health Services, Inc./Hartgrove Hospital, *Respondent*
April 6, 2006
Page 1 of 2

**The particulars are:**

Complainant, Dr. Robert K. Marshall, was one of the oldest, most distinguished and respected employees at Hartgrove Hospital. Hartgrove Hospital is owned and operated by a subsidiary of Universal Health Services, Inc. Dr. Marshall had been employed as the Director of Psychology at Hartgrove Hospital for more than 25 years. Since 1980, Dr. Marshall has had consistently excellent annual performance reviews from five different hospital administrators. Under his leadership, the training program of the Psychology Department enjoyed a reputation as one of the premier training sites in the Chicago area. He is the only person to have served two separate terms as the President of the Chicago Area Directors of Training in Clinical Psychology.

Since the time Steven Airhart became the CEO of Hartgrove Hospital, and increasingly in the past year, Mr. Airhart has made repeated derogatory comments to Dr. Marshall referencing the long time he has been with the hospital and deprecating the value of his services. Mr. Airhart's comments included devaluing Dr. Marshall's longevity and because of this longevity calling attention, in a threatening manner, to Dr. Marshall's salary as being "out of the norm". Further, Steven Airhart's treatment of Complainant is part of a repeated pattern of harassment, humiliation and intimidation of long-term employees, over the age of 40.

The hospital maintains a clinical training program for psychology students of several local educational institutions. As the Director of Psychology, Dr. Marshall was chiefly responsible for administering this program.

On January 12, 2006, Mr. Airhart falsely and without substantiation suggested that ethical allegations had been made against him by students and falsely accused Dr. Marshall of ethical lapses. In the presence of another employee, Mr. Airhart falsely accused Dr. Marshall of not fulfilling the training requirements for students and jeopardizing the students' potential licensure. Mr. Airhart stated that Dr. Marshall had subjected the hospital to liability for breaking the training contracts with the schools.

Dr. Marshall immediately refuted the improper and baseless accusation and explained the training procedures to Mr. Airhart. Following Airhart's accusations, Dr. Marshall received confirmation from the directors of training at the respective educational institutions that his program was in full compliance with the training contracts. The directors were in fact very pleased with the training of their students, and stated that there was no basis for the charge. Dr. Marshall has received letters of support from the directors, validating the fulfillment of the training contracts and the overall superior reputation of the program under Dr. Marshall. Notably, demonstrative of the pretextual nature of the allegation, when Dr. Marshall advised Airhart of these responses, however, Airhart's reaction (rather than one of relief and satisfaction)

**Charge of Discrimination [continued]**

Dr. Robert K. Marshall, *Complainant*
Universal Health Services, Inc./Hartgrove Hospital, *Respondent*
April 6, 2006
Page 2 of 2

was hostile, threatening and accusatory. He charged Dr. Marshall with "behaving improperly" and "interfering with an investigation", renewing the false allegation against him.

On repeated occasions through February 2006, both verbally and in writing, Dr. Marshall exposed the baseless nature of Airhart's accusations. During this time, Mr. Airhart deliberately excluded Dr. Marshall from applying for a promotion to Director of Ambulatory Care Services, a position for which he was unquestionably the most qualified individual in the organization. This position did not previously exist in the organization, and was not discussed or announced before January 20, 2006—the same day it was offered to one of Dr. Marshall's former student trainees, Missy Bundy. Ms. Bundy is substantially younger than Dr. Marshall and has 20 years less clinical experience. The position of Director of Ambulatory Care Services was organizationally placed immediately under the CEO, Mr. Airhart and directly above Dr. Marshall. A new position at this level would normally require deliberation and consultation with the Executive Council, which met the day before, but it was never discussed. Instead, the very next day the job was created, posted and filled—a day when Airhart knew Dr. Marshall was on vacation.

Further, in addition to being denied the opportunity for this position, the creation of this job was effectively a demotion for Dr. Marshall. He was no longer the highest ranking psychologist in the organization, an important responsibility was removed from him, and he was placed under the supervision of a demonstrably less qualified, less experienced former student who was substantially younger and who had been licensed less than three years. When Dr. Marshall raised his concern to Mr. Airhart about the inequity of the promotion, Mr. Airhart again threatened Dr. Marshall, angrily stating that Dr. Marshall should forget about Missy Bundy and had better focus on the investigation of the charges against him.

On February 7, 2006, after 25 years of service Dr. Marshall's employment was terminated by Mr. Airhart. By the acts and conduct described herein, Respondent has unlawfully discriminated against Complainant on account of his age. Because of Respondent's actions, Dr. Marshall has suffered irreparable damage to his career and professional reputation, public humiliation, intense emotional distress and suffering, and severe financial hardship.

**End.**

EEOC Form 161-B (3/98)         **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Robert Marshall<br>421 S. Clinton<br>Oak Park, IL 60304 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

**Certified Mail # 7099 3400 4053 9679**

☐  *On behalf of person(s) aggrieved whose identity is*
    CONFIDENTIAL *(29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2006-03500 | Karen Lanners,<br>Investigator | (312) 353-0902 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)       _____       4/1/08
                    John P. Rowe,                        (Date Mailed)
                    District Director

cc:

**HARGROVE HOSPITAL**



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sarita Gaddis** and mailed or faxed to the address or enforcement fax number located at the top of this page.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* <u>**Before filing a lawsuit,**</u> **but within 90 days of your receipt of the Right to Sue, or**

* <u>**After your lawsuit has been filed.**</u> **If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the first page of your court complaint showing the docket number.**

If you are the Respondent you may be granted access to the file <u>**only after**</u> **a lawsuit has been filed. Include with your request a copy of the first page of the court complaint reflecting the docket number.**

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

Before you can have access to the file you must sign an Agreement of Nondisclosure. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

Your request for access to your file will be acted upon no later than ten (10) days from receipt of your request.

When the file is available for review, you will be contacted. You can review the file in our offices and/or request that a copy of the file be sent to you. Files cannot be removed from the office.

Your file will be copied by Uniscribe, 300 West Adams Street, Suite 900, Chicago, Illinois, 60606. You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the service. Therefore, <u>it is recommended that you first review your file</u> to determine what documents, if not all, you want copied. EEOC cannot review your file nor provide a count of the pages contained in it. If you choose not to review your file, it will be sent <u>in its entirety</u> to the copy service <u>and you will be responsible for the cost.</u> Payment must be made directly to the service.

Case 1:08-cv-03824    Document 1-3    Filed 07/03/2008    Page 3 of 3

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

**PRIVATE SUIT RIGHTS:**

This issuance of this Notice of Right to Sue ends EEOC's process with respect to your charge. You may file a lawsuit against the respondent named in your charge within 90 days from the date you receive this Notice. Therefore you should **keep a record of this date.** Once this 90-day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed **well in advance of the expiration of the 90-day period.**

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the state where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.

You may contact EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

A lawsuit against a **private employer** is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a **State agency or a political subdivision of the State** is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or, probably, the Equal Pay Act against a **State instrumentality** (an agency directly funded and controlled by the State) **can only be filed in a State court.**

A lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or the Equal Pay Act against a **political subdivision of the State,** such as municipalities and counties, may be filed in the U.S. District Court.

For a list of U.S. District Courts, please see reverse side.

**IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUESTS FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.**

**ATTORNEY REPRESENTATION:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the court having jurisdiction in your case may, at its discretion, assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well before the end of the 90-day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within this 90-day period.

**DESTRUCTION OF FILE:**

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

**IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE IN WRITING WHEN THE LAWSUIT IS RESOLVED.**